**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**


TERI A. DUPONT, et al.                                        CIVIL ACTION

versus                                                        25-936-JWD-SDJ

EXXON MOBIL CORPORATION, et al.


**RULING**

This matter is before the Court on the *Motion to Recuse*[1] filed by Plaintiffs pursuant to 28 U.S.C. § 455.  Plaintiffs seek the recusal of Magistrate Judge Scott Johnson because his spouse, Karli Glascock Johnson ("Mrs. Johnson"), represents Defendant Exxon Mobil ("Exxon") in a separate lawsuit pending before another section of this Court "with similar factual and legal questions."[2]  Plaintiffs argue that Mrs. Johnson is a partner at Kean Miller LLP ('Kean Miller"), "a [law] firm with a substantial, ongoing and well-known business relationship, and long-term history of, representing Exxon."[3]  Plaintiffs contend that these facts warrant Judge Johnson's removal under § 455 (a) because "a reasonable person, fully informed of these facts, would question whether Judge Johnson can remain impartial while ruling on … issues that materially overlap with those [Mrs. Johnson] is actively litigating on behalf of the same defendant."[4]

---

[1] Rec. Doc. No. 71.
[2] Rec. Doc. No. 71-1, p. 1.
[3] *Id.*
[4] *Id.*  Plaintiffs also argue that Judge Johnson's recusal is required under § 455 (b)(4) or (b)(5)(iii) because "Mrs. Johnson's current representation of Exxon and her position as a partner in [Kean Miller] creates financial and other interests that could be substantially affected by the outcome of this proceeding."  *Id.* The Court does not address these arguments because it decides this motion on other grounds.

1

Exxon has filed an *Opposition*,[5] to which Plaintiffs have replied.[6]  The Court has considered the parties' submissions and applicable law and is prepared to rule.  For the following reasons, Plaintiffs' *Motion to Recuse* is GRANTED.

## A.  PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs are current and former residents of the Standard Heights Subdivision in Melville, Louisiana, a neighborhood built on the former site of Exxon's Melville Pumping Station, a crude oil pumping facility that operated until 1952.[7]  On September 5, 2014, Plaintiffs filed this action in Louisiana state court alleging contamination from the Melville facility—including "free phase crude oil and its constituents such as benzene"—exists throughout the Subdivision and has caused widespread property damage and personal injuries, namely various kinds of leukemia and rare blood disorders.[8]  On October 17, 2025, Exxon removed this action to another section of this Court.[9]  Plaintiffs subsequently filed a *Motion to Remand*[10] which was referred to Judge Johnson.

As this matter was progressing, a separate action against Exxon and several codefendants (the "*William* case") was removed to this Court on February 13, 2026, and is presently pending by consent before Magistrate Judge Richard L. Bourgeois.[11]  In that case, the plaintiff—who had done work for Exxon and other oil and gas companies between 2000 and 2025—alleges that "occupational exposure to benzene [among other crude oil constituents] … caused him to develop chronic lymphocytic leukemia."[12]  A

---

[5] Rec. Doc. No. 78.
[6] Rec. Doc. No. 87.
[7] Rec. Doc. Nos. 71-1, p. 5; 78, p. 1.
[8] *Id.*
[9] Rec. Doc. No. 1.
[10] Rec. Doc. No. 16.
[11] *Williams v. Exxon Mobil Corp*, 3:26-cv-00162.  The case was originally assigned to Magistrate Judge Johnson but was reassigned to Magistrate Judge Bourgeois on February 23, 2026.
[12] Rec. Doc. No. 78, p. 3 (citing 3:26-cv-00162, Rec. Doc. No. 1-2, at ¶ 2).

*Motion to Remand* was filed by one of Exxon's co-defendants on March 13, 2026.[13] Ten days later, on March 23, 2026, Exxon filed a *Corporate Disclosure Statement* in the *Williams* matter, identifying Kean Miller as its retained law firm and Mrs. Johnson its "Trial Attorney."[14] Notably, Exxon has never been represented in the instant matter by either Mrs. Johnson or any other attorney associated with Kean Miller.[15]

On April 7, 2026, Plaintiffs' counsel delivered a letter to Judge Johnson stating their concern that Mrs. Johnson's representation of Exxon in the "substantially similar" *Williams* case raised an issue for consideration under 28 U.S.C. § 455."[16] Specifically, Plaintiffs noted that both matters consisted of "benzene exposure cancer cases removed years after they were filed against the same Exxon entity, with both cases … awaiting a determination of motions to remand."[17] Further, Plaintiffs noted that in both cases Exxon "has taken the *exact opposite position*" regarding the timeliness of their removal pursuant to 28 U.S.C. 1446(b)(3).[18] Thus, they pointed to "a risk that the determination of certain issues in either [case] may become persuasive authority or, if appealed, binding authority impacting the outcome of the other."[19]

Judge Johnson subsequently held a status conference to discuss the April 7 letter during which he noted "the absence of clear guidance … [requiring him] to recuse *sua sponte*[,]"[20] and allowed Plaintiffs two weeks to file a motion seeking his recusal.[21]

---

[13] *See* 3:26-cv-00162, Rec. Doc. No. 26.
[14] *See* 3:26-cv-00162, Rec. Doc. No. 31, p. 1.
[15] *See* Rec. Doc. No. 78, p. 4.
[16] Rec. Doc. No. 71-2, p. 2.
[17] *Id.*
[18] *Id*. *See* Rec. Doc. 71-1, p. 9. Exxon argues that this is a "demonstrably false" representation of Exxon's position in the two cases. Rec. Doc. No. 78, p. 13. Because the Court can resolve the instant *Motion* on other grounds, it need not address this dispute of fact.
[19] *Id.* at p. 3.
[20] Rec. Doc. No. 71-3, p. 26.
[21] Rec. Doc. No. 65.

Plaintiffs filed the instant *Motion to Recuse* on April 29, 2026,[22] at which point it was referred to the Clerk of Court for random reallotment, and was allotted to this Division.[23]

### B. LEGAL STANDARD

Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The very purpose of § 455(a) "is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible."[24] In deciding whether recusal of the subject judge is required under § 455(a), the Court must determine "whether a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality."[25] Importantly, § 455(a) "focuses on the appearance of impartiality, as opposed to the existence in fact of any bias or prejudice."[26] Therefore, "a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street."[27]

Instructively, the Judicial Conference of the United States Committee on Codes of Conduct has issued Advisory Opinion No. 107, *Disqualification Based on Spouse's Business Relationships* (the "Advisory Opinion"), which explains that "[a] spouse's business relationships with a party, law firm, or attorney appearing before a judge may result in the judge's disqualification under Canon 3C(1) of the Code of Conduct for the United States Judges."[28] The Advisory Opinion provides four factors to be considered in

---

[22] Rec. Doc. No. 71.
[23] Rec. Doc. No. 72.
[24] *In re Vioxx Prods Liab. Litig*, 388 Fed. Appx. 391, 396 (5th Cir. 2010) (per curiam) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988)).
[25] *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 484 (5th Cir. 2003).
[26] *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980).
[27] *Id.*
[28] Comm. on Codes of Conduct, Advisory Opinion No. 107; *see* Rec. Doc. No.71-4, p. 1.

determining whether recusal is warranted "[w]hen a judge knows that a client of the judge's spouse or the spouse's business appears before the judge."[29] These factors include:

> (1) the spouse's personal role or lack of personal role in providing services to the client, (2) whether the services provided to the client are substantial and ongoing, (3) the nature of the client's relationship to the spouse or the spouse's business, and (4) the financial connection between the client, the business, and the judge's spouse (including the percentage of business revenue the client provides and the amount of compensation the spouse earns from the client).[30]

The Advisory Opinion goes on to provide guidance on the appropriate analysis for when a judge's spouse is personally engaged in providing services to a client appearing before the judge. In that situation, the judge should consider "the degree of involvement of the spouse or the spouse's business."[31] The Advisory Opinion counsels that "[i]f the relationship to the client involves only an occasional or isolated transaction, recusal is not required unless some other particular fact or circumstance gives rise to reasonable questions about the judge's impartiality."[32] But if "the spouse is personally engaged in providing services to a client who appears before the judge in an unrelated proceeding, recusal is appropriate if the judge knows that the spouse or the spouse's business has an exclusive arrangement, or a <u>substantial and ongoing</u> relationship" with that client.[33]

---

[29] *Id*. *See* Rec. Doc No. 71-4, p. 2.
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id* (emphasis added).

Accordingly, the Fifth Circuit has recognized that each case of recusal "is extremely fact intensive and fact bound, and must [therefore] be judged on its unique facts and circumstances more than by comparison to situations considered in prior jurisprudence."[34]  A motion to recuse is committed to the sound discretion of the district judge hearing the cause.[35]

### C. ANALYSIS

The Court first addresses Exxon's argument that the Plaintiffs' Motion is *untimely* because "Plaintiffs knew Kean Miller and Mrs. Johnson represent Exxon long before they raised the issue of recusal."[36]  Specifically, Exxon contends that given Plaintiffs' averment that Kean Miller's longstanding relationship with Exxon is "a fact that is well-known in the community," it must follow that Mrs. Johnson's appearance in *Williams* did not suddenly reveal this fact to Plaintiffs.[37]  Exxon therefore argues that Plaintiffs have "availed themselves of Judge Johnson by failing to bring their *Motion* sooner."[38]

Federal law requires that motions for recusal be timely filed.[39]  Although the Fifth Circuit has declined to adopt a *per se* rule on what constitutes untimeliness, "[a] timely motion to recuse is one filed 'at the earliest moment after knowledge of the facts demonstrating the basis' for the recusal."[40]  In any event, "[c]ourts should take special care so as to prevent parties from 'abus[ing] [§] 455 for a dilatory and litigious purpose

---

[34] *United States v. Jordan*, 49 F.3d 152, 157 (5th Cir. 1995).

[35] *Garcia v. Woman's Hosp. of Tex.*, 143 F.3d 227, 229-30 (5th Cir. 1998).

[36] Rec. Doc. No. 78, p. 5.

[37] *Id* (citing Rec. Doc. No. 71-1, p. 17).

[38] *Id* at p. 4 (cleaned up).

[39] *See Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1165 n.3 (5th Cir. 1982) (noting that both 28 U.S.C. §§ 144 and 455 "require that a motion to disqualify be timely filed.").

[40] *Hill v. Breazeale*, 197 Fed. Appx. 331, 335 (5th Cir. 2006) (quoting *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994)).

based on little or no substantial basis."[41]  Thus, cases applying this timeliness requirement make clear that the chief evils to be protected against are (1) "a party [who] already knows the facts purportedly showing an appearance of impropriety but waits until after an adverse decision has been made by the judge before raising the issue of recusal[];"[42] and (2) "gamesmanship in seeking who [is] perceive[d] to be a more favorable judge."[43]

A review of the facts presented satisfies the Court that Plaintiffs' *Motion* is neither untimely nor "a mere litigation stratagem."[44]  While it may be the case that Kean Miller's relationship with Exxon was well-known in the legal community and thus to Plaintiffs' counsel, Plaintiffs' basis for seeking Judge Johnson's recusal is the appearance of impropriety that arises considering "*Mrs. Johnson is a partner at Kean Miller who represents Exxon*."[45]  Indeed, Plaintiffs concede that "Kean Miller's representation of Exxon in other cases, standing alone … may not be grounds for recusal."[46]  But Exxon does not demonstrate how Plaintiffs could have known that Mrs. Johnson, though a partner at Kean Miller, personally represented Exxon in any matter, let alone one with overlapping issues of fact and a similar procedural posture to the present action.[47]

---

[41] *Sensley v. Albritton*, 385 F.3d 591, 598 (5th Cir. 2004) (quoting *Liljeberg*, 38 F.3d at 1409 n.8).

[42] *United States v. Sanford*, 157 F.3d 987, 988-89 (5th Cir. 1998).

[43] *IFG Port Holdings LLC v. Lake Charles Harbor & Terminal Dist.*, 742 F. Supp. 3d 530, 543 (W.D. La. 2024) (quoting *Morrison v. Walker*, 2016 WL 7637672, at *6 (E.D. Tex. Dec. 7, 2016)).

[44] *Delesdernier v. Porterie*, 666 F.2d 116, 121 (5th Cir. 1982).

[45] Rec. Doc. No. 78, p. 5 (emphasis added).

[46] Rec. Doc. No. 87, p. 2.

[47] To be sure, Exxon does state that Plaintiffs knew "Kean Miller and Mrs. Johnson represent ExxonMobil long before they raised the issue of recusal."  Rec. Doc. No. 78, p. 5.  Yet, as previously noted, the only support Exxon provides for this proposition is Plaintiffs' own representation of a "longstanding client relationship … among Kean Miller, Mrs. Johnson, and Exxon."  *Id* (citing Rec. Doc. 71-1, p. 16).  But it is unclear from this broad statement whether the relationship Plaintiffs allude to is the one between Mrs. Johnson and Exxon, or instead between Mrs. Johnson and Kean Miller, a law firm that is frequently retained by Exxon.  The distinction is significant because Exxon makes no independent showing that, prior to the March 23 *Corporate Disclosure Statement* filed by Exxon in *Williams*, Plaintiffs' counsel knew Mrs. Johnson represented Exxon in any capacity or, even further, that Mrs. Johnson was a partner at Kean Miller.  To expect Plaintiffs' counsel to have uncovered Mrs. Johnson's role in the *Willaims* litigation prior to that date is unreasonable.  The law imposes no such obligation as it would be "unreasonable, unrealistic, and detrimental to our judicial system" to do so.  *Listecki v. Official Comm. of Unsecured Creditors*, 780 F.3d

7

Tellingly, this would charge Plaintiffs' counsel with knowledge that Judge Johnson himself did not have, nor felt a need to investigate based upon the identity of the parties appearing in this action.[48]

Thus, the earliest date that Plaintiffs can be charged with knowledge of the facts underlying their *Motion to Recuse* Judge Johnson is March 23, 2026, the date of Exxon's *Corporate Disclosure Statement* identifying Mrs. Johnson as its "Trial Attorney" in the *Williams* matter. It is undisputed that within two weeks of this revelation, Plaintiffs' counsel submitted the April 7 letter for Judge Johnson's consideration. Further, Plaintiffs filed the instant *Motion* within the two-week period allowed by Judge Johnson for that purpose.[49] The Court therefore concludes that Plaintiffs' *Motion* was timely filed.

Turning to the merits of Plaintiffs' *Motion*, the Court finds that the factors in the Judicial Conference Committee's Advisory Opinion warrant Judge Johnson's recusal in this matter due to an appearance of impropriety. To start, Mrs. Johnson personally provides legal services to Exxon.[50] As Exxon's designated "Trial Attorney" in the *Williams* case, these services are substantial and ongoing.[51] The same is therefore true of the "nature of [Exxon's] relationship to [Mrs. Johnson]."[52] And while the Court has not been provided any specific information regarding Mrs. Johnson's partnership with Kean Miller or the precise "financial connection" between Mrs. Johnson and Exxon, knowledge of

---

731, 750 (7th Cir. 2015). It is axiomatic that "[b]oth litigants and counsel should be able to rely upon judges to comply with their own Canons of Ethics." *Id* (internal citations omitted).

[48] *See* Rec. Doc. No. 71-3, p. 3 (Judge Johnson stating that "the only thing I knew about my wife's case in the Middle District was that she had gotten initially assigned to Judge Bourgeois in a … consent case. [I] [d]idn't know who it was, what the facts were, and, I've had no discussions with her about that.").

[49] *See* Rec. Doc. Nos. 65 and 71.

[50] Rec. Doc. No. 78, pp. 3-4 ("Judge Johnson's spouse … and her law firm … represent Exxon in *Williams*.") (cleaned up).

[51] 3:26-cv-00162 (Rec. Doc. No. 31, p. 1).

[52] Comm. on Codes of Conduct, Advisory Opinion No. 107; *see* Rec. Doc. No.71-4, p. 1.

same does not require a different result.[53]  The Advisory Opinion explicitly counsels that "recusal is appropriate if … the spouse or the spouse's business has … a substantial and ongoing relationship" with a client who appears before a judge.[54]  Such is the case here.

Notwithstanding Exxon's argument to the contrary, the Fifth Circuit's decision in *In re Billedeaux*[55] does not require a different result.  There, a judge's recusal was sought based on the fact that "her husband [was] a partner in a firm that ha[d] represented [the defendant] on various occasions and that, as a result of that relationship, she and her husband [stood to] benefit from fees from that client."[56]  Importantly, in finding no appearance of impropriety, the court noted "[t]here is no … averment that [the judge's] husband has handled matters for [the] client."[57]  Here, as previously noted, Mrs. Johnson holds a substantial and ongoing role in handling a matter for Exxon.  To the extent Exxon also relies on an unreported case from the Southern District of New York for the proposition that no appearance of impropriety results where a judge's spouse "worked for [a] litigant on unrelated matters," neither that case nor its cited authorities—which includes *In re Billedeaux*—address that same circumstance (i.e., a spouse's substantial and ongoing representation).[58]  Indeed, and far more recently, a magistrate judge in that same district concluded, after consideration of the factors in the Advisory Opinion, that an

---

[53] Even so, Mrs. Johnson's position as a partner at Kean Miller, in and of itself, weighs against the need for an inspection of any such financial material.  The Fifth Circuit long ago recognized that "[t]he outcome of any proceeding handled by a law firm may affect [all of] the partners' financial interests as well as certain noneconomic interests, including the reputation and goodwill of the firm."  *Potashnick*, 609 F.2d at 1113.  Because Mrs. Johnson not only stands to benefit, as a partner, from any favorable outcomes Kean Miller achieves for Exxon, but is—more importantly—personally and substantially involved in achieving those very outcomes, the Court finds the "financial connection" between Mrs. Johnson and Exxon favors recusal.

[54] *Id*; *see* Rec. Doc. No. 71-4, p. 3.

[55] 972 F.2d 104, 105 (5th Cir. 1992).

[56] *Id.*

[57] *Id.*

[58] *In re Digital Music Antitrust Litig.*, 2007 WL 632762, at *12 (S.D.N.Y. Feb. 27, 2007).

appearance of impropriety had arisen because her husband, through his law firm, was personally involved in handling an unrelated matter for a litigant whose case she had been assigned for "general pretrial supervision and dipositive motions."[59]

Lastly, Exxon's concern that Judge Johnson's recusal in this case will "open the floodgates for more absurd recusals and frustrate the duty of federal judges to hear cases" is unpersuasive.[60] The Fifth Circuit's instruction that recusal efforts "be judged on their unique facts and circumstances more than by comparison to situations considered in prior jurisprudence"[61] alleviates any concern that the Court's decision will be applied by other jurists to its "logical extremity."[62] That is, nothing in the Court's ruling will require "an untold number of judges to recuse themselves from matters merely because they were [or are] married to another attorney."[63] Further, nothing in this ruling requires Judge Johnson to categorically recuse himself from every matter in which a Kean Miller client is a party. For either of these propositions to be true, not only would courts need to disregard the Fifth Circuit's clear instruction to "sensitively weigh the circumstances in each case,"[64] but Advisory Opinion No. 107's *case specific* and *fact sensitive* four factor test would, by operation, be neither of those things. The Court is therefore—as it must be when considering a recusal motion—captive to the facts presented in this case and this Ruling applies to this case only.

---

[59] *Sorial v. Robinhood Fin., LLC*, 2024 WL 4308357, at *1-3 (S.D.N.Y. Sept. 26, 2024).
[60] Rec. Doc. No. 78, p. 16.
[61] *United States v. Jordan*, 49 F.3d 152, 157 (5th Cir. 1995).
[62] Rec. Doc. No. 78, p. 14.
[63] *Id.*
[64] *In re City of Houston*, 745 F.2d 925, 927 (5th Cir. 1984) (cleaned up).

**D.  CONCULSION**

For the foregoing reasons, Plaintiffs' *Motion to Recuse*[65] Magistrate Judge Scott Johnson is GRANTED.  The Clerk of Court is directed to reassign this matter to another magistrate judge.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this __23rd__ day of _____July_____, 2026.


_____

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[65] Rec. Doc. No. 71.

11